United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M.,<br><br>        Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br><br>        Defendant. | Case No. 24-cv-03766-SVK<br><br>**ORDER AFFIRMING COMMISSIONER'S DECISION**<br><br>Re: Dkt. Nos. 13, 19 |

Plaintiff appeals from the final decision of the Commissioner of Social Security, which denied her application for disability insurance benefits. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 5, 7. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

I.     **BACKGROUND**

On or about March 5, 2021, Plaintiff filed an application for Supplemental Security Income. *See* Dkt. 8 (Administrative Record ("AR")) 77. Plaintiff claimed that her disability began on April 4, 2020. *Id.* The claim was denied initially on December 6, 2021 (AR 76-98) and denied on reconsideration on July 22, 2022 (AR 99-126). On November 1, 2023 an Administrative Law Judge ("ALJ") held a telephonic hearing. *See* AR 19. Plaintiff was unrepresented at the ALJ hearing, but she is represented in this litigation. *See* AR 19; Dkt. 1. On December 13, 2023, the ALJ denied Plaintiff's claims. AR 19-42 (the "ALJ Decision"). The ALJ concluded that Plaintiff has the following severe impairments: "mild degenerative disc disease, lumbar spine; iron deficiency anemia; and mild neurocognitive disorder/major depressive disorder, single episode, mild; unspecified anxiety disorder/and PTSD." AR 21. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. AR 24. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. AR 26-33. The ALJ determined that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that she can perform. AR 34. Accordingly,

the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, since March 5, 2021, the date the application was filed. AR 35.

The Appeals Council subsequently denied review of the ALJ Decision. AR 1-6. Plaintiff timely filed an action in this District, seeking review of the ALJ Decision. Dkt. 1.

In accordance with the Federal Rules of Civil Procedure Supplemental Rules for Social Security Actions, the Parties have presented the action for decision on the briefs. Dkt. 13 (Plaintiff's brief); Dkt. 19 (Commissioner's brief); *see generally* Fed. R. Civ. P. Supp. SS Rule 5. The action is now ready for decision without oral argument.

## II.   ISSUES FOR REVIEW

1. Did the ALJ properly evaluate whether Plaintiff's mental impairments met or medically equaled a listing?
2. Did the ALJ properly evaluate Plaintiff's residual functional capacity?
3. Did the ALJ properly develop the record?

## III.   STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin*., 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider

the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted).  Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492.  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

**IV.    DISCUSSION**

    **A.    Issue One:  Evaluation of Whether Plaintiff's Mental Impairments Met or Medically Equaled a Listing**

        **1.    Legal standard**

The Social Security Administration has supplemented the five-step sequential disability evaluation process with special regulations governing the evaluation of mental impairments at steps two and three of the five-step process.  *See generally* 20 C.F.R. § 416.920.  At step two of the sequential analysis, the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  In cases involving mental impairments, the ALJ must first determine whether the claimant has a medically determinable mental impairment by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings."  20 C.F.R. § 416.920a(b)(1).  The ALJ must then "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings." *Id.*

At step three of the disability evaluation, the ALJ must determine whether the claimant's impairment or combination of impairments meets or is medically equivalent to a listed impairment.  *Ghanim*, 763 F.3d at 1160; *see also Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); 20 C.F.R. § 416.920(a)(4)(iii).  An impairment meets a listing when all of the medical

3

criteria required for that listing is satisfied, whereas to equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment. *Ogin v. Astrue*, No. C 11-5077 MEJ, 2012 WL 3877679, at *8 (N.D. Cal. Sept. 6, 2012), *rev'd on other grounds sub nom. Ogin v. Colvin*, 608 F. App'x 519 (9th Cir. 2015) (internal quotation marks and citations omitted). A finding that the claimant's condition meets or is equivalent to a listed impairment "establish[es] a disability and end[s] the five step inquiry." *Kennedy*, 738 F.3d at 1175; *see also Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) ("If the impairment meets or equals one of the listed impairments, the claimant is preclusively presumed to be disabled"); 20 C.F.R. 416.920(d)(claimant who meets or equals a listed impairment is will be found disabled "without considering [her] age, education, and work experience"). As the claimant, Plaintiff bears the burden of proving that her condition meets or equals a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). If the claimant's impairment does not meet or equal a listing, the evaluation proceeds to step four of the general disability inquiry, in which the ALJ determines the claimant's RFC. *See* 20 C.F.R. § 416.920(a)(4)(iv), (e).

### 2.     Analysis

At step two of the five-step inquiry, the ALJ found that Plaintiff had severe mental impairments, *i.e.,* neurocognitive disorder/depressive disorder and anxiety/PTSD. AR 21. At step three, the ALJ concluded that these mental impairments did not meet or medically equal a listed impairment. AR 24-26.

Plaintiff's brief describes the first issue for review as whether the ALJ correctly "assess[ed] the severity of [Plaintiff's] mental impairments." Dkt. 13 at 10. As the Commissioner notes in its opposition brief, however, in actuality Plaintiff's arguments instead "appear to challenge [the] ALJ's rationale for discounting a marked limitation within the medical opinion from Dr. Kim" as part of the ALJ's analysis of the listings at step three. Dkt. 19 at 1 n.3. Plaintiff did not file the optional reply brief, so she has not contested the Commissioner's characterization of her argument. The Court agrees that Plaintiff's argument is directed at the ALJ's analysis of the listings at step three, rather than at the ALJ's determination of the severity of Plaintiff's mental

impairments at step two. Most of this section of Plaintiff's brief is explicitly directed to the ALJ's analysis of the findings of consultative psychologists Tiadora Kim, Psy.D. and Megan Stafford, Psy.D. as to whether Plaintiff had mild, moderate, or marked limitations, which is an issue relating the listings. *See* Dkt. 13 at 10-12. Although in this section of her brief Plaintiff also challenges the ALJ's conclusions regarding Plaintiff's lack of psychiatric care (*see* Dkt. 13 at 12-13), that discussion in the brief appears to refer to the portion of the ALJ Decision that cites this lack of treatment as an additional reason to discount Dr. Kim's finding of "marked impairment." *See* AR 30. Accordingly, the Court now considers whether the ALJ erred at step three of the inquiry in concluding that Plaintiff's impairments do not meet or medically equal a listed impairment.

The ALJ concluded at step three that the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.06, and 12.15. AR 24. Listings 12.02, 12.06, and 12.15 each have three paragraphs designated A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.00(A)(2). A claimant's "mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* Paragraph A of each of these listings "includes the medical criteria that must be present in your medical evidence"; to satisfy Paragraph B, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of four areas of mental functioning; and to satisfy Paragraph C, the claimant's mental disorder must be "serious and persistent." *Id*. at § 12.00(A)(2)(a)-(c).

Here, the ALJ concluded that that Plaintiff had mild to moderate limitations in certain functional areas. AR 24-25. However, the ALJ found that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments do not cause one "extreme" or two "marked" limitations. AR 25. Plaintiff challenges the ALJ's conclusions as to the "paragraph B" criteria. *See* Dkt. 13 at 10-13. These criteria require an ALJ to assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the claimant's ability to adapt or manage oneself. 20 C.F.R. §§ 416.920a(b)(2), (c)(3). Rating

5

the degree of functional limitation at step two is a highly individualized process that requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's impairment interferes with his or her "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(1), (2). The ALJ rates the degree of limitation in each of the four areas using a five-point scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920(c)(4); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th Cir. 2007). "[U]nless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities," a rating of "none" or "mild" generally means that a claimant's impairments are not severe, whereas a rating of "extreme" represents "a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 416.920a(c)(4), (d)(1).

Regarding the paragraph B criteria, the ALJ concluded that Plaintiff had mild to moderate limitations in all four areas of mental functioning and therefore found that Plaintiff's mental impairments do not meet or equal the severity of a listing. AR 24-26. Plaintiff challenges the ALJ's conclusions regarding the paragraph B criteria, in particular the ALJ's decision to discount the opinion of Dr. Kim that Plaintiff had a marked limitation in the ability to maintain concentration, attention, and persistence/consistency and moderate limitations in the ability to adapt to the usual stresses common to a competitive work environment. Dkt. 13 at 10-13.

Dr. Kim performed a psychological exam and testing on June 18, 2022 at the request of the agency. AR 604-611. In two of the four functional areas, the ALJ actually found, based upon evidence in the record, that Plaintiff was more limited than Dr. Kim had found. Specifically, whereas Dr. Kim assessed Plaintiff had no limitation in understanding, remembering, and performing either simple/repetitive or complex/detailed written and oral instructions (AR 610), the ALJ found that Plaintiff was mildly limited in this area (AR 24). Dr. Kim assessed mild impairment in the area of interacting with others (AR 610), whereas the ALJ found Plaintiff to have a moderate limitation in this area (AR 25). In a third area concerning adapting or managing oneself, Dr. Kim and the ALJ agreed that Plaintiff was moderately impaired. AR 25, 610.

The only category of activity where Dr. Kim found Plaintiff was markedly impaired was in

maintaining concentration, attention, and persistence. AR 610. This was also the only functional area in which the ALJ concluded that Plaintiff had a lesser limitation than Dr. Kim had found, with the ALJ concluding that Plaintiff had only moderate impairment. AR 25. The ALJ explained that two other mental evaluators, Drs. Smith and Reddy, had assessed Plaintiff with a moderate limitation in this area, and the ALJ found these opinions "persuasive because they are consistent with the overall medical evidence as a whole," including the assessment of Dr. Stafford, a consultative psychologist. AR 25. The ALJ further explained her decision to discount Dr. Kim's finding of a marked limitation in this area as follows:

> [W]hile at the end of her report, consultative psychologist Dr. Kim indicated marked limitation in this area, within the actual mental status evaluation itself, she had observed the claimant to have "not impaired" concentration based on her ability to complete serial 7's from 100 without error and to orally spell the word 'WORLD' correctly, both forwards and backwards.

AR 25 (citing Ex. 22F (AR 606). Elsewhere in the ALJ Decision, she further explains:

> Dr. Kim's assessment of a marked impairment in the ability to maintain concentration, persistence, or pace is an outlier and is not persuasive. It is not consistent with the overall record, including all of the other opinions of mental impairment. Moreover the claimant admits that she is not in any mental health treatment and takes no mental health medications. The opinion is also internally inconsistent in that it is not supported by the doctor's own findings, which indicated that the claimant had no difficulty following simple and no difficulty in understanding and completing complex directions.

AR 30.

Plaintiff argues that "[t]he ALJ errs in assessing Dr. Kim's report because Dr. Kim specifically notes exactly what limitations he opined and the supporting evidence for the same." Dkt. 13 at 11 (citing AR 610). However, the issue before the Court is not whether the ALJ would have been warranted in crediting this opinion from Dr. Kim, but whether substantial evidence supports the ALJ's decision to discount Dr. Kim's opinion. It does. The ALJ appropriately addressed Dr. Kim's finding of a marked limitation and found it to be both internally inconsistent for specified reasons and inconsistent with the medical record overall including other medical opinions that were specifically identified. *See, e.g.,* AR 25, 30.

Even if the ALJ erred in rejecting Dr. Kim's finding of a "marked" limitation in one of the "paragraph B" criteria, that error was harmless. As discussed above, a finding that a claimant

7

satisfies the "paragraph B" criteria of the listings requires one extreme limitation or two marked limitations in a functional area. 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.00(A)(2)(b). Plaintiff points to only one area in which Dr. Kim opined that she had a marked impairment. Plaintiff has not identified a second marked limitation or any extreme limitations. Even if the ALJ had agreed with Dr. Kim's finding of one area of marked impairment, the "paragraph B" criteria would not be satisfied absent a second area of marked limitation. Accordingly, if the ALJ committed any error in evaluating Dr. Kim's finding of a "marked" limitation in one area, that error was harmless. *See Robinson v. Berryhill*, No. 16-cv-02537-JCS, 2018 WL 1366638, at *14 (N.D. Cal. Mar. 16, 2018).

Plaintiff's brief also contains an argument concerning the criteria of listing 12.05. Dkt. 13 at 11-12. The ALJ did not specifically address that listing. *See* AR 24-26. However, the ALJ is not required "to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). When the ALJ's "evaluation of the evidence" adequately describes the "foundations on which the ultimate factual conclusions are based," requiring an ALJ to explain why a claimant does not meet each listing "would unduly burden the social security disability process." *Id.* Like the listings the ALJ considered, listing 12.05 requires an extreme limitation of one or marked limitation of two of the same four areas of mental functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Because the ALJ's conclusions that the criteria were not met for listings 12.02, 12.06, and 12.15 were supported by substantial evidence, the Court finds that the ALJ provided an adequate basis for rejecting listing 12.05 as well. *See Kenneth C. v. Saul*, No. 19-cv-06627-JST, 2021 WL 4927413, at *15 (N.D. Cal. Mar. 15, 2021).

**B.     Issue Two: Evaluation of Plaintiff's RFC**

The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform light work with additional limitations. AR 26 (citing 20 C.F.R. § 416.967(b)). The RFC argument in Plaintiff's brief repeatedly focuses on the walking, standing, and sitting requirements associated with light work. *See* Dkt. 13 at 13-16. A job is in the category of "light work" if it involves "a good deal of walking or standing, or when it involves sitting most of the time with some pushing

8

1    and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). By contrast, a job is in the "sedentary

2    work" category if it "involves sitting" and "occasionally" requires walking and standing. 20

3    C.F.R. § 416.967(b).

4        Although somewhat difficult to discern from Plaintiff's brief, she appears to advance two

5    main challenges to the ALJ's RFC determination. *See* Dkt. 13 at 13-16. First, Plaintiff criticizes

6    how the ALJ weighed the conflicting medical opinions, particularly the opinions about the

7    duration for which Plaintiff was able to sit, walk, and stand, to arrive at her conclusion about

8    Plaintiff's RFC. *Id.* at 13-15. Second, Plaintiff argues that the ALJ should have considered a later

9    onset date or the possibility of different periods of disability in light of the results of Plaintiff's

10   examination by Katherine Kenny, M.D. on May 24, 2022. *Id.* at 15-16.

### 1. Weighing the medical evidence.

12   The Social Security Administration regulations require the ALJ to consider all medical

13   opinions and "evaluate their persuasiveness" based on the following factors: (1) supportability;

14   (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors."

15   20 C.F.R. §416.920c(a)-(c). The two "most important factors" for determining the persuasiveness

16   of medical opinions are consistency and supportability and the ALJ is required to explicitly

17   address supportability and consistency in her decision. 20 C.F.R. § 416.920c(a), (b)(2); *see also*

18   *Woods v. Kijakazi,* 32 F.4th 785, 791-793 (9th Cir. 2022). The ALJ may, but is not required to,

19   explain how she considered the remaining three factors. 20 C.F.R. § 416.920c(b)(2). The new

20   regulations "displace [the Ninth Circuit's] longstanding case law" requiring an ALJ to articulate

21   "specific and legitimate reasons" for rejecting a treating physician's opinion where the opinion is

22   contradicted by other medical opinions. *Woods,* 32 F.4th at 787.

23   "Supportability means the extent to which a medical source supports the medical opinion

24   by explaining the 'relevant ... objective medical evidence.'" *Id.* at 791-92; *see also* 20 C.F.R.

25   § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations

26   presented by a medical source are to support his or her medical opinion(s) or prior administrative

27   medical finding(s), the more persuasive the medical opinions or prior administrative medical

28   finding(s) will be"). "Consistency means the extent to which a medical opinion is 'consistent ...

United States District Court
Northern District of California

1   with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32
2   F.4th at 792; *see also* 20 C.F.R. §416.920c(c)(2) ("The more consistent a medical opinion(s) or
3   prior administrative medical finding(s) is with the evidence from other medical sources and
4   nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior
5   administrative medical finding(s) will be"). As with all other determinations made by the ALJ, the
6   ALJ's explanation of persuasiveness of the medical opinion(s) must be supported by substantial
7   evidence. *See Woods,* 32 F.4th at 792.

8         Plaintiff argues that the ALJ erred in concluding that Plaintiff had the RFC to perform light
9   work with additional limitations, specifically in finding Plaintiff "limited to light exertional work
10  which requires standing six hours a day." Dkt. 13 at 13; *see also id.* at 13-15, AR 26. Plaintiff's
11  argument relies on an opinion offered by Katherine Kenny, M.D., who conducted a consultative
12  examination of Plaintiff on May 24, 2022. *See* Dkt. 13 at 13-16; *see also* AR 594-602. As
13  mentioned, Plaintiff's brief repeatedly focuses on the walking, standing, and sitting requirements
14  associated with light work. *See, e.g.,* Dkt. 13 at 13 (stating that Dr. Kenny opined "maximum
15  standing and walking two hours and maximum sitting four hours"); *id.* at 14 (reciting Dr. Kenny's
16  findings regarding Plaintiff's difficulty in sitting, standing, and walking). The ALJ summarized
17  Dr. Kenny's opinion as finding that Plaintiff "was capable of doing sedentary work (stand/walk
18  only 2 hours and sit for 4 hours in an 8-hour workday)." AR 31; *see also* AR 600.

19        In evaluating Plaintiff's RFC, the ALJ explained that "[t]he medical source opinions in this
20  case range from reduced range of sedentary [] to light [] to medium work." *Id.* As mentioned,
21  Dr. Kenny opined that Plaintiff was capable of doing work in which she could stand/walk only 2
22  hours and sit for 4 hours in an 8-hour workday. AR 600-601. Consultative examiner Eugene
23  McMillan, M.D. examined Plaintiff on October 5, 2021 and opined that she could stand and walk
24  cumulatively for a total of at least 6 hours per day and sit for up to 6 hours a day. AR 524. The
25  ALJ remarked that Dr. Kenny and Dr. McMillan "supported their opinions with objective findings
26  and came to almost opposite conclusions about the claimant's condition." AR 31.[1] Under these

---

[1] As discussed, Plaintiff's focus in this case is on the ALJ's determination of her RFC to stand, walk, and sit. The Court notes that Drs. Kenny, McMillan, and Mishek opined both on the

circumstances, the ALJ concluded that the opinion of reviewing physician Deborah G. Mishek, M.D. that Plaintiff could perform a range of light work involving standing and/or walking for about 6 hours in a normal workday and sitting for about 6 hours in a normal workday "provides a reasonable middle ground between the extremes of Dr. McMillan and Dr. Kenny." AR 31; *see also* AR 115-116.

The ALJ explained how she reached this conclusion. The ALJ stated that "the evidence does not support Dr. Kenny's assessment" of Plaintiff's ability to stand, walk, or sit for particular durations because Plaintiff "does not have any significant stand/walk or sitting limitations, beyond that required of light work, as indicated by her activities of daily living." AR 31.[2] The ALJ explained that Plaintiff "exercises more than 150 minutes/week for 30-60 minutes per day with walking or swimming per [] March 2021 visit notes" and "lives alone and has intact activities of daily living." AR 29. The ALJ also offered additional reasons why Dr. Kenny's findings were both inconsistent with and not supported by the treatment record and the examination itself. *See, e.g.,* AR 31 ("The claimant's presentation at this examination was not consistent with the treatment record, which showed grossly unremarkable physical examinations and only minimal treatment"); *id.* ("The opinion appears to rely on the assessment of limitations resulting from an impairment for which the source has not treated or examined the individual"); *id.* ("She cites difficulty with prolonged standing, due to markedly positive straight leg rise on the left side and left lower extremity weakness, but these are not consistent with any durational finding.").

In her brief, Plaintiff summarizes various findings from Dr. Kenny's one-time examination that arguably could support greater stand/walk/sit restrictions. *See* AR 14; *see also* AR 597-601. The Plaintiff also argues that the ALJ "has not resolved the conflict" in the medical record "and

---

stand/walk/sit issue as well as the amount of weight Plaintiff could lift. Dr. Kenny opined that Plaintiff could lift 10 pounds both occasionally and frequently (AR 600); Dr. McMillan opined that Plaintiff could occasionally lift 50 pounds and frequently lift 20 pounds (AR 524); and Dr. Mishek found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds (AR 115).

[2] By contrast to Dr. Kenny's opinions regarding Plaintiff's stand/walk/sit limitations, the ALJ found Dr. Kenny's opinions regarding Plaintiff's postural and manipulative limitations to be "well-supported and consistent with the overall record." AR 31.

11

what we are left with is an average of the opinions in the record instead of a rational and reasoned analysis of which physician during which time warrants the greatest weight." AR 15 (citing 20 C.F.R. §§ 404.1520; 416.920). Plaintiff further asserts that "[r]eversal is warranted because none of the opinions are consistent with the ALJ." Dkt. 13 at 16. All of these arguments are unavailing. "[T]he ALJ's RFC finding is not a medical finding; it is an administrative finding regarding a claimant's ability to perform basic work functions that is expressly reserved to the ALJ." *Azia B.*, 2023 WL 1442841, at *8 (citations omitted). The ALJ must consider the record as a whole, and to the extent it is conflicting, it is for the ALJ to resolve conflicts in the medical evidence. *Id.* "[T]he RFC need not exactly match the opinion findings of any particular medical source." *Mills v. Comm'r of Soc. Sec.*, No. 2:13-cv-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014); *see also De Fletes v. Colvin,* No. C12-00661 HRL, 2013 WL 1345724, at *2 (N.D. Cal. Mar. 31, 2013). "As long as the ALJ's interpretation is reasonable, the fact that Plaintiff would have resolved the conflict differently, or the evidence may have supported a different interpretation, does not establish legal error." *Id.* (citations omitted).

Here, the ALJ's evaluation of the record as a whole addressed the consistency and supportability of the medical opinions as required under the regulations and satisfies the substantial evidence standard of review.

### 2. Relevant time period for RFC determination

Plaintiff argues that "Dr. Kenney's [sic] detailed exam in later 2022 indicates a more severe condition that cannot be rejected based upon earlier less severe findings." Dkt. 13 at 15. According to Plaintiff, if a claimant's condition changes within the relevant disability period, "an ALJ may conclude [] a later onset date of disability, or bifurcate, and consider different periods of disability." *Id.* Plaintiff argues that "[t]he ALJ's dismissal of Dr. Kenney's detailed opinion without further development was error." *Id.* In essence, Plaintiff argues that ALJ erroneously failed to consider whether she became disabled as of a later date than her alleged onset date of April 4, 2020.

"To be entitled to disability benefits under title II of the Act or to be eligible for Supplemental Security Income (SSI) payments based on disability under title XVI of the Act, a

claimant must file an application, meet the statutory definition of disability, and satisfy the applicable non-medical requirements." SSR 18-01p. If the Commission finds that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application, it then determines the claimant's Established Onset Date (EOD), which is generally "the earliest date that the claimant meets both the definition of disability and the non-medical requirements for entitlement to benefits under title II of the Act or eligibility for SSI payments under title XVI of the Act during the period covered by his or her application." *Id*.

> At the hearing level of our administrative review process, if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of an ME by soliciting testimony or requesting responses to written interrogatories (i.e., written questions to be answered under oath or penalty of perjury). The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

*Id*.

Here, the ALJ found that Plaintiff was not disabled at any time through the date of the decision. AR 35 ("The claimant has not been under a disability, as defined in the Social Security Act, since March 5, 2021, the date the application was filed.") In this situation, the question of the *when* Plaintiff became disabled did not arise. *See generally Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (emphasis in original; citation omitted) (discussing SSR 83-20, which was rescinded and replaced by SSR 18-01p).

In any event, the premise of Plaintiff's argument, which is that her condition had progressed to a more severe state by the time of Dr. Kenny's examination, is not supported by the record. Dr. Kenny's examination of Plaintiff took place on May 24, 2022. As reflected in the ALJ's discussion, the entire medical record in this case covers periods both before and after this date, from May 28, 2020 to June 18, 2022. *See generally* AR 22-24. Plaintiff does not identify any portions of that record that show a progressively worsening condition that culminated in Dr. Kenny's examination. Instead, the ALJ found that Dr. Kenny's opinions concerning

1    Plaintiff's condition were an "outlier" and were not consistent with or supported by other evidence
2    in the record.  AR 30.  For the reasons discussed in section II.B.1. above, that conclusion is
3    supported by substantial evidence.
4        Accordingly, the Court finds no error in the ALJ's RFC determination.

### C.    Issue Three:  Failure to Develop the Record

Plaintiff argues that the ALJ had a duty to further develop the record because "[s]everal critical unresolved inconsistencies appear in the [existing] record" and "[t]he record appears incomplete as well."  Dkt. 13 at 17.  Plaintiff has the duty to prove that she is disabled.  *See* 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"); *see also Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001). However, the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks omitted); *see also* 20 C.F.R. § 404.900(b) (stating that administrative review process is conducted in "an informal, non-adversarial manner"); 20 C.F.R. § 416.912(d) (Social Security regulations stating that "[o]ur responsibility" includes certain efforts to help develop applicant's complete medical history).  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  *Tonapetyan*, 242 F.3d at 1150.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.  The ALJ's duty to develop the record is heightened when the claimant is unrepresented.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).  An ALJ's duty "is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Tonapetyan*, 242 F.3d at 1150 (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.1992)).

Plaintiff points to the following "inconsistencies" in support of her argument that the ALJ failed to properly develop the record:  (1) Dr. Stafford's finding that Plaintiff had an IQ of 67 and

14

Dr. McMillan's finding of "symptoms consistent with post-concussion headaches" could indicate a head injury or concussion; and (2) generalized body pain that "seems consistent with the severe trigger points found by Dr. Kenney." Dkt. 13 at 17.  Plaintiff also argues that the record "appears incomplete" for the following reasons:  (1) x-rays showed a "vacuum disc phenomenon" but Dr. Shakir noted it to be a mild degenerative change; Dr. McMillen "had no record"; and Dr. Kenney's exam "shows the weakness and pain that is described and possibly associated with the vacuum disc condition yet the ALJ did not address [it] at all for this unrepresented claimant"; and (2) the ALJ did not address Plaintiff's fatigue.  *Id.* at 17-18.

        Even though the ALJ's duty to further develop the record is heightened due to Plaintiff's unrepresented status at the hearing and her mental impairments, the record does not support Plaintiff's allegations of "inconsistencies" or "incompleteness."  The ALJ evaluated Plaintiff's claim that she had been diagnosed with a concussion but concluded that the medical record, including CT brain scans and the results of two consultative exams, had not confirmed a concussion.  AR 21.  The ALJ also noted Plaintiff's complaints about pain, including back pain, but explained in detail why the copious medical evidence does not support the severity or frequency of her alleged symptoms.  AR 27-28.  Contrary to Plaintiff's assertion (*see* Dkt. 13 at 18), the ALJ also addressed Plaintiff's claims of fatigue and explained why they did not warrant additional limitations in the RFC.  AR 32 (although Dr. Cheung relays that Plaintiff presented with fatigue, no additional limitations were warranted because he "did not assess any work-related functional limitations," and he "is not a medical doctor or mental health practitioner.")

        Although Plaintiff disagrees with the conclusions the ALJ reached after weighing the evidence in the medical record on the relevant symptoms, "this is not a case in which the evidence was ambiguous or the record was inadequate to allow for evaluation of the evidence" but instead "[t]here simply was a failure of proof on Plaintiffs' part" with respect to her claimed impairments." *Lizarraga v. Berryhill*, No. 16-cv-6561-BLF, 2018 WL 827895, at *7 (N.D. Cal. Feb. 12, 2018).  Plaintiff's failure of proof "was not sufficient to trigger the ALJ's duty to develop the record." *Id.*

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED.**

Dated: May 12, 2025

*Susan van Keulen*

SUSAN VAN KEULEN
United States Magistrate Judge